1

E. Robert Spear (8672)

2

REMMEL & SPEAR, LLP
7456 West Sahara Suite 101

E-filed on January 28, 2010

3

Las Vegas, Nevada 89117

Telephone: (702) 750-0571

4

Facsimile: (702) 750-0572

5

rspear@remmelspear.com

6

*Attorney for debtors and debtors-in-possession*

7

8

**UNITED STATES BANKRUPTCY COURT**

9

**DISTRICT OF NEVADA**

10

11

In re:

Case No.: 09-23767-LBR

12

GLEN MEEK and SHAWNA PARTRIDGE

Chapter 11

13

Debtors.

**DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

14

15

Date:

16

Time:

17

18

    Glen A. Meek and Shawna M. Partridge, debtors and debtors-in-possession, by and

19

through their undersigned counsel, propose this debtors' plan of reorganization pursuant to

20

section 1121(c) of the Bankruptcy Code for the resolution of debtors' outstanding creditor

21

claims and interests. Reference is made to the Amended Disclosure Statement (as that term is

22

defined herein) distributed contemporaneously herewith, for a discussion of the debtors'

23

history, business, results of operations, projections for future operations, risk factors, a

24

25

summary and analysis of the plan, and certain related matters. The debtors is the proponent of

26

this plan within the meaning of section 1129 of the Bankruptcy Code.  All holders of claims are

27

encouraged to read this plan and the disclosure statement in their entirety before voting to

28

accept or reject this plan. Subject to certain restrictions and requirements set forth in section

1127 of the Bankruptcy Code and Fed.R. Bankr. P. 3019 and Article XII of this plan, the debtors reserve the right to alter, amend, modify, revoke or withdraw this plan prior to its substantial consummation.

### ARTICLE I
### DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

*1.1 Scope Of Definitions; Rules of Construction.*

For the purpose of the Plan and the accompanying Disclosure Statement, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meaning ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

*1.2 Definitions.*

1.21 "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after commencement of the Chapter 11 Case, (b) Professional Fee Claims, (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

2

1.22 "Administrative Claim Bar Date" means the end of the first Business Day occurring on or after the sixtieth (60th) day after the Effective Date.

1.23 "Administrative Convenience Claim" means an Allowed Unsecured Claim of $2,000 or less.

1.24 "Allowed Claim" means a Claim or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date (i) no proof of Claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled, other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed, or (c) for which a proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the time periods fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by Final Order, or (d) that is expressly allowed in a liquidated amount in this Plan. An Allowed Claim may refer to a Secured Claim, General Unsecured Claim, or Priority Claim as the context provides.

1.25 "Allowed Equity Interest" means an Equity Interest or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date (i) no proof of Claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled, other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed, or (c) for which a proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to

3

its allowance has been filed within the time periods fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by Final Order, or (d) that is expressly allowed in a liquidated amount in this Plan.

1.26 "Allowed Priority Claim" means a Priority Claim that is an Allowed Claim.

1.27 "Allowed Secured Claim" means a Secured Claim that is an Allowed Claim.

1.28 "Allowed Unsecured Claim" means an Unsecured Claim or General Unsecured Claim that is an Allowed Claim.

1.29 "Annual Basis" means the time period commencing on April 1 through March 31 of each year.

1.30 "Available Cash" means as of any date of determination all Net Distributable Cash.

1.31 "Avoidance Action(s)" means a cause of action brought pursuant to sections 542, 543, 544, 545, 547, 548 or 549 of the Bankruptcy Code.

1.32 "Ballot" means the Ballot for accepting or rejecting this Plan in a form approved by the Bankruptcy Court.

1.33 "Ballot Date" means the last date determined by the Bankruptcy Court for the casting of Ballots.

1.34 "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

1.35 "Bankruptcy Court" means the United States Bankruptcy Court for the District of Nevada or such other court as may have jurisdiction over the Chapter 11 Case.

1.36 "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Forms, as amended, the Federal Rules of Civil Procedure, as

4

amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable in the Chapter 11 Case or proceedings therein, as the case may be.

1.37 "Bar Date" is December 2, 2009 and the date for which any claims filed thereafter will be void and disallowed for purposes of voting and distribution.

1.38 "Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Fed. R. Bankr. P. 9006(a)), on which commercial banks are open for business in Las Vegas, Nevada.

1.39 "Cash" means currency, checks, negotiable instruments and wire transfers of immediately available funds.

1.40 "Chapter 11 Case" means the Chapter 11 case of the Debtors, including all adversary proceedings pending in connection therewith.

1.41 "Claim" means a claim against the Debtors, whether or not asserted as defined in section 101(5) of the Bankruptcy Code.

1.42 "Claims Objection Deadline" means the last day for filing objections to Disputed Claims, which shall be 90 days after the Effective Date.

1.43 "Class" means one of the classes of Claims or Interests herein described.

1.44 "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order.

1.45 "Confirmation Date" means the date of entry by the clerk of the Bankruptcy Court of the Confirmation Order.

1.46 "Confirmation Hearing" means the hearing to consider the confirmation of the Plan under section 1128 of the Bankruptcy Code.

5

1.47 "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan.

1.48 "Creditor" means any Person or an entity holding a Claim against the Debtors.

1.49 "Cure" means the distribution of cash, or other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

1.50 "Debtors" means Glen A. Meek and Shawna Partridge.

1.51 "Disallowed Claim" is a Claim that is not an Allowed Claim.

1.52 "Disclosure Statement" means the written disclosure statement that relates to the Plan, as amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3018.

1.53 "Disputed Claim" shall mean a Claim which has not been Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court, and if no proof of Claim has been, or deemed to have been filed, by the applicable Bar Date, which has been or hereafter is listed in the Schedules as disputed, unliquidated, or contingent, and which has not been resolved by written agreement by the parties or an order of the Bankruptcy Court; if a proof of Claim has been filed or deemed to have been filed, by the applicable Bar Date, (i) a Claim for which a corresponding Claim has been listed in the Schedules as disputed, unliquidated, or contingent; (ii) a Claim for which a corresponding Claim has been listed in the Schedules as other than disputed,

6

unliquidated, or contingent, but the amount of such Claim as asserted in a timely filed proof of Claim varies in an amount greater than or in a Class different than that listed by the Debtors in the Schedules; (iii) as to which the Debtors or any party in interest entitled to file and prosecute such objection in the Chapter 11 Case, has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code or the Bankruptcy Rules, or which is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn, or determined by a Final Order; (iv) for which a Proof of Claim was required to be filed by order of the Bankruptcy Court, but as to which a Proof of Claim was not timely or properly filed; or (v)that is disputed in accordance with the provisions of this Plan.

1.54 "Disputed Claim Reserve" means a reserve established to hold in one or more accounts Cash equal to the aggregate amount thereof that would have been distributed on a Distribution Date on account of a Disputed Claim.

1.55 "Distribution(s)" means any distribution by the Debtors or Reorganized Debtors of monies to the holders of Allowed Claims.

1.56 "Distribution Date(s)" means the days that the Debtors will make Distributions, on April 1, July 1, October 1, and January 1.

1.57 "Effective Date" means the last to occur of: 1) the first Business Day that is at least eleven (11) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect and (ii) the Business Day on which all conditions to the consummation of the Plan set forth in Section 9.2 of this Plan have been satisfied or waived as provided in Section 9.3 of this Plan and is the effective date of the Plan.

1.58 "Equity Interest" means an Interest of the Debtors in the Debtors's property.

7

1.59 "Estate" means the estate created for the Debtors in the Chapter 11 case pursuant to section 541 of the Bankruptcy Code.

1.60 "Exempt Asset(s)" means any asset deemed to be exempt under applicable law, 11 U.S.C. section 522 and/or Nevada Revised Statute 21.090.

1.61 "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, the operation or effect of which, not having been reversed, modified, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal from or to seek review or rehearing of has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

1.62 "General Unsecured Claim" means an Unsecured Claim against the Debtors that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, or Secured Claim.

1.63 "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.64 "Initial Distribution Date" means the first Business Day after the Effective Date.

1.65 "Insider" means any individual or entity meeting the description set forth in section 101(31) of the Bankruptcy Code.

1.66 "Interest(s)" means an interest of the Debtors or interest in the property of Debtors.

1.67 "IRA Net Proceeds" means proceeds from the Debtors' Individual Retirement Account ("IRA") less any taxes that are due upon removal of such funds from the Debtors' IRA.

1.68 "Litigation Claims" means the claims, rights of action, suits, or proceedings,

8

whether in law or in equity, whether known or unknown, that the Debtors or their Estate may hold against any Person, which are to be retained by the Reorganized Debtors.

1.69 "Net Distributable Cash" means as of any date of determination, the Debtors' Projected Disposable Income in the Debtors' possession and the net proceeds from any recovery on the Litigation Claims and Avoidance Actions.

1.70 "Non-Exempt Asset(s)" means any asset not deemed to be exempt under applicable law, 11 U.S.C. section 522 and/or Nevada Revised Statute 21.090.

1.71 "Other Definitions" means a term used in this Plan that is not defined in this Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed thereto in the Bankruptcy Code or Bankruptcy Rules.

1.72 "Person" means person as defined in section 101(41) of the Bankruptcy Code.

1.73 "Petition Date" means the date the Debtors filed their petition for relief commencing the Chapter 11 Case or August 23, 2007.

1.74 "Plan" means this Chapter 11 reorganization plan and all exhibits annexed hereto or referenced herein, as the same may be amended, modified, or supplemented from time to time.

1.75 "Plan Exhibit" means any exhibit attached hereto.

1.76 "Priority Tax Claim" means a Claim entitled to priority in Bankruptcy Code §§ 507(a)(2)-(8).

1.77 "Projected Disposable Income" means the Debtors' projected disposable income less his living expenses.

1.78 "Pro Rata" means, at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including Disputed Claims)

9

in such Class, unless the Plan provides otherwise.

1.79 "Professional" means any professional employed in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code or otherwise and any professional seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

1.80 "Professional Fee Claim" means a Claim of a professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date.

1.81 "Reorganization Case" means the Debtors' case under Chapter 11 of the Bankruptcy Code which is currently pending before the Bankruptcy Court as Case No. BK-S-09-23767-LBR.

1.82 "Reorganized Debtors" means the Debtors after the Effective Date, who will own all of their assets, Exempt Assets or Non-Exempt Assets.

1.83 "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed in the Bankruptcy Court by the Debtors as such schedules or statements as may be amended or supplemented from time to time in accordance with Fed. R. Bankr. P. 1009.

1.84 "Secured Claim" means the Claim of any Creditor of the Debtors who holds a lien, security interest, or other encumbrance in property of the Debtors' estate as security for repayment thereof, and which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent such Claim has been allowed by the Court pursuant to section 502 of the Bankruptcy Code and to the extent of the value of the security determined in accordance with section 506 of the Bankruptcy Code.

1.85 "Substantial Consummation" is the date upon which there is a Final Order .

1.88 "Trustee" means the United States Trustee.

1.89 "Unimpaired" means when used with reference to a Claim or Interest, a Claim or Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

1.90 "Unsecured Claim" means any Claim that is not a Secured Claim, a Priority Claim, or an Administrative Claim, or an unclassified Claim of the kind described by Section 507(a)(8) of the Bankruptcy Code. Unsecured Claim shall not include the Allowed Equity Interest.

*1.3 Rules of Interpretation.*

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than a particular portion of the Plan, (e) captions and heading to Articles and sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

*1.4 Computation of Time.*

In computing any period of time prescribed or allowed by the Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply.

*1.5 Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy

11

Code and Bankruptcy Rules), the laws of the State of Nevada shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

## ARTICLE II

### CLASSIFICATION OF CLAIMS AND INTERESTS

*2.1 Introduction.* All Claims and Interest, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Administrative Claims and Priority Tax Claims have not been classified. The respective treatment of unclassified claims is set forth in Section 3.1 of this Plan.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

For ease of review, the following chart summarizes the Classes of Claims under this Plan:

| | |
|---|---|
| Class 1: Claim of Secured Creditor BAC Home Loans Servicing-First Mortgage | Unimpaired- no solicitation required |
| Class 2: Claim of America's Servicing Company-secured portion | Unimpaired-no solicitation required |
| Class 3: Claim of general unsecured creditors | Impaired-solicitation required |

12

*2.2 Specific Classification of Claims and Interests.*

      2.21 Class 1: Claims of Secured Creditor BAC Home Loans Servicing – Unimpaired. This claim consist of BAC Homes Loans Servicing's claim related to the first mortgage on the Debtors' residence, 2030 Park Way North, Las Vegas, Nevada 89106.

      2.22 Class 2: Claim of America's Servicing Company-secured portion.  This claim consists of the claim of America's Servicing Company to the extent it is covered or satisfied by the collateral for the claim, Aspen Club Avenue, North Las Vegas, Nevada 89081.

      2.23 Class 3: Claims of General Unsecured Creditors – Impaired.  Class 2 consists of all general unsecured claims as set forth in proofs of claims that have been filed, including the claim of BAC Home Loans Servicing for the second mortgage on 2030 (2032) Park Way North, Las Vegas, Nevada 89106, if any, and the unsecured portion of claims, if any, for America's Servicing Company and Citimortgage, Inc. related to loans made to Debtors related to 2905 Aspen Club Avenue, North Las Vegas, Nevada 89081.

## <u>ARTICLE III</u>

### TREATMENT OF CLAIMS AND INTERESTS

*3.1 Unclassified Claims.*

      3.11 Administrative Claims. Except as otherwise provided for herein, and subject to the requirements of this Plan, inclusive, on, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Administrative Claim becomes payable pursuant to any agreement between the Debtors and the holder of such Administrative Claim, each holder of an Allowed Administrative Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim: (x) cash

equal to the unpaid portion of such Allowed Administrative Claim or (y) such treatment as to which the Debtors and such holder have agreed in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Case shall be paid in accordance with the terms and conditions of any agreements relating thereto.

3.12 Priority Tax Claims. Each holder of an Allowed Priority Tax Claim, if any, shall be entitled to receive, on account of such Allowed Priority Tax Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim will be paid on the later of (i) the Initial Distribution Date, (ii) the tenth (10th) Business Day after the date on which an order allowing such Claim becomes a Final Order, or (iii) such other time as is agreed to by the holder of such Claim and Debtors prior to the Effective Date or the Reorganized Debtors after the Effective Date.  The Debtors do not believe that there is any tax liability or priority unsecured claims.

*3.2 Classes Of Claims and Interests That Are Not Impaired.*

3.21 Class 1: Claims of Secured Creditor BAC Home Loans Servicing – Unimpaired. This claim consist of BAC Homes Loans Servicing's claim related to the first mortgage on the Debtors' residence, 2030 Park Way North, Las Vegas, Nevada 89106.  Debtors' shall continue to make monthly payments directly to BAC Homes Loans Servicing as they become due.

3.22    Class 2: Claim of America's Servicing Company-secured portion.  This claim consists of the claim of America's Servicing Company to the extent it is covered or satisfied by the collateral for the claim, Aspen Club Avenue, North Las Vegas, Nevada 89081.  Debtors intend to turn over 2905 Aspen Club Avenue, North Las Vegas, Nevada 89081 to America's Servicing Company through this plan.

*3.3 Classes of Claims That Are Impaired.*

3.31 Class 3: Claims of General Unsecured Creditors – Impaired.  Class 3 consists of holders of General Unsecured Claims. This class includes the amount of all general unsecured claims as set forth in proofs of claims that have been filed.  This class also includes the claim of BAC Home Loans Servicing for the second mortgage on 2030 (2032) Park Way North, Las Vegas, Nevada 89106, if any, and the unsecured portion of claims, if any, for America's Servicing Company and Citimortgage, Inc. related to loans made to Debtors related to 2905 Aspen Club Avenue, North Las Vegas, Nevada 89081.  The estimated distribution to Allowed Claims in Class 3 is 18%.  Distributions to Allowed General Unsecured Claims shall be made from the Debtors' Projected Disposable Income.

Upon Confirmation, the Debtors shall turn over 2905 Aspen Club Avenue, North Las Vegas, Nevada 89081 to America's Servicing Company and shall make annual payments of at least $10,000.00 to holders of Allowed General Unsecured Claims on a Pro Rata basis and on an Annual Basis.  Distributions of at least $10,000.00 on a Pro Rata Basis and on an Annual Basis and every year thereafter (from January 1 through December 31) shall be made to Allowed General Unsecured Claims for 5 years, January 1, 2010 through December 31, 2014, and such distributions shall be paid in installments made on or about January 1, April 1, July 1, and October 1. The Debtors shall make distributions of Available Cash to Allowed General Unsecured Claims only after all Administrative Claims have been paid in full, but such payments may total less than $10,000.00 for the annual period prior to January 1, 2010 only. Because the Debtors are using their Projected Disposable Income, which may increase or decrease, the duration of payments to Allowed Claims cannot be determined with exactitude, however, Debtors' anticipate completion of all payments within five (5) years.  If this plan is

not modified, the Debtors' case will be converted to one under Chapter 7 of the Bankruptcy Code.

3.3 Reservation of Rights Regarding Claims. Except as otherwise explicitly provided in the Plan, nothing shall affect the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Claims.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

*4.1 Impaired Classes of Claims and Interests Entitled to Vote.* Claim holders in each Impaired Class of Claims are entitled to vote as a class to accept or reject the Plan. However, Class 1 is unimpaired under the Plan and is, therefore, presumed to accept the Plan. Their votes will not be solicited.

*4.2 Acceptance by an Impaired Class.* In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

*4.3 Summary of Classes Voting on the Plan.* The votes of holders of Claims in Class 2 will be solicited with respect to this Plan.

*4.4 Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.* To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtors will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Plan Exhibit or Schedule, including to amend or modify it to satisfy

16

the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

*5.1 Payments To Classes.* Payments to Allowed Claim holders as set forth herein and in the Plan will be made with the Debtors' Projected Disposable Income.

*5.2 Closing Date and Post-Closing Date Transactions.* The Reorganized Debtors shall commence making payments to Allowed General Unsecured Claims as set forth herein.

*5.2 Source of Funds.* All funds necessary to pay creditors pursuant to the Plan shall come from Available Cash.

*5.3 Preservation of Rights of Action.* The Reorganized Debtors shall obtain the rights to all claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or the Estate may hold against any person or entity. The Debtors shall also retain all Avoidance Actions. The Reorganized Debtors may pursue such retained litigation claims in the Bankruptcy Court. Except as otherwise provided in this Plan or the Confirmation Order, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors may, in their sole discretion, enforce, sue on, settle or compromise (or decline to do any of the foregoing) all Litigation Claims and Avoidance Actions.

*5.4 Effectuating Documents; Further Transactions.* The Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

17

*5.5 Exemption From Certain Transfer Taxes.* Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from the Debtors to the Reorganized Debtors or any other Person or entity pursuant to the Plan in the United States shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer

tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND LEASE

*6.0 Executory Contracts And Leases.* The Debtors do not believe that they are party to any unexpired leases or executory contracts.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

*7.1 Distributions and Disputed Claims.* In order to facilitate Distributions to holders of Allowed Claims, and to the extent there are Disputed Claims in any Class, the Reorganized Debtors shall set aside in a designated reserve account the payments or Distributions applicable to such Disputed Claims as if such Disputed Claims were Allowed Claims, pending the allowance or disallowance of such Disputed Claims. In the event that the Reorganized Debtors wish to deposit or hold a lesser amount than required herein and is unable to reach an agreement with the holder of the Disputed Claim, on the amount to be deposited or held, the

Bankruptcy Court shall fix the amount after notice and hearing. Upon Final Order with respect to a Disputed Claim, the holder of such Disputed Claim, to the extent it has been determined to be an Allowed Claim, shall receive from the Reorganized Debtors that payment or Distribution to which it would have been entitled if the portion of the Claim so allowed had been allowed as of the Effective Date. Such payment or distribution shall be made as soon as practical after the order allowing the Claim has become a Final Order.

*7.2 Means of Payment.* Cash payments made pursuant to this Plan shall be in U.S. funds, by the means agreed to by the payor and the payee, including by check or wire transfer, or, in the absence of an agreement, such commercially reasonable manner as the payor shall determine in its sole discretion.

*7.3 Delivery of Distributions.* Distributions to holders of Allowed Claims shall be made by the Debtors (a) at the addresses set forth on the proofs of Claim filed by such holders (or at the last known addresses of such holders if no proof of Claim is filed or if the Debtors has been notified of a change of address), (b) at the addresses set forth in any written notice of address changes delivered to the Debtors after the date of any related proof of Claim, (c) at the addresses reflected in the Schedules if no proof of Claim has been filed and the Debtors have not received a written notice of a change of address. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtors are notified of the holder's then current address, at which time all missed distributions shall be made to the holder without interest from the date that the distribution was returned as undeliverable. Amounts in respect of undeliverable distributions made by the Debtors shall be returned to the Debtors until such distributions are claimed.

All claims for undeliverable distributions made by the Debtors must be made on or before the

19

second (2nd) anniversary of the Effective Date, after which all unclaimed property shall revert to the Reorganized Debtors free of any restrictions thereon and the claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan shall require the Debtors or Reorganized Debtors, or any representative or agent of these parties, to attempt to locate any holder of an Allowed Claim or Interest.

*7.4 Withholding And Reporting Requirements.* In connection with this Plan, and all distributions hereunder, the Debtors shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan: (a) each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Debtors for the payment and satisfaction of such tax obligations. As long as this case remains open in the Bankruptcy Court the Debtors shall mail and file a report of all distributions to every holder of an Allowed Claim every six (6) months until paid in full. Once a class of creditors has been paid in full, the Debtors shall not be further required to mail and file such reports to that class of creditors.

*7.5 Setoffs.* The Reorganized Debtors may, but shall not be required to, set off against

any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or Reorganized Debtors may have against the holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim that the Debtors or Reorganized Debtors may have against such holder.

**ARTICLE VIII**
**PROCEDURES FOR RESOLVING DISPUTED,**
**CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISPUTED INTERESTS**

*8.1 Prosecution Of Objections.* After the Confirmation Date, only counsel to the Reorganized Debtors shall have the authority to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims. From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

*8.2 Prosecution Of Objections.* After the Confirmation Date, only counsel to the Reorganized Debtors shall have the authority to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims. From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

*8.3 No Distributions Pending Allowance.* Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

/ / /

# ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

*9.1 Conditions To Confirmation.* The following are conditions precedent to the occurrence of the Confirmation Date: the entry of an order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code.

*9.2 Conditions To Effective Date.* The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 9.3 of this Plan:

9.21 The Confirmation Order shall have been entered and become a Final Order in form and substance reasonably satisfactory to the Debtors.

9.22 The Plan has been confirmed pursuant to the Confirmation Order and the Confirmation Order remains in full force and effect without material modification thereof.

9.23 All actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

9.3 Waiver Of Conditions. Each of the conditions set forth in Section 9.2 of this Plan, may be waived in whole or in part by the Debtors without any other notice to parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors or Reorganized Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or the Reorganized Debtors). The failure of a Debtors or Reorganized Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **ARTICLE X**

## **RETENTION OF JURISDICTION**

10.1 Under sections 105(a) and 1l42 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of; and related to, the Chapter 1l Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

10.11 Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest not otherwise allowed under the Plan, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

10.12 Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Reorganized Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

10.13 Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtors are party or with respect to which a Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

10.14 Effectuate performance of and payments under the provisions of the Plan;

10.15 Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 1l Case;

23

10.16 Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

10.17 Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

10.18 Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

10.19 Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

10.20 Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

10.21 Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

10.22 Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

10.23 Except as otherwise limited herein, recover all assets of the Debtors and property of the Debtors' Estate, wherever located;

24

10.24 Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

10.25 Hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

10.26 Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

10.27 Hear and determine any matters relating to modification of the amount and length of Plan payments; and

10.28 Enter a final decree closing the Chapter 11 Case.

<u>**ARTICLE XI**</u>

**TITLE TO PROPERTY; DISCHARGE; INJUNCTION**

*11.1 Revesting of Assets.* Subject to the provisions of this Plan, the property of the Estate shall vest in the Reorganized Debtors, subject to the limitations set forth herein, on the Effective Date. As of the Effective Date, all such property of the Debtors shall be free and clear of all liens except as otherwise provided herein. From and after the Effective Date, Reorganized Debtors may use, acquire and dispose of its property free of any restriction of the Bankruptcy Code, including the employment of and payment to professionals, except as set forth herein.

*11.2 Discharge.* As set forth under 11 U.S.C. § 1141(d)(5), confirmation of the plan and completion of all payments under the Plan, or as so ordered by the Court if the Debtors have not completed payments, may serve as a discharge and release of all Claims or other debt that arose before the Confirmation Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of Claim based on such debt is filed

25

or deemed filed pursuant to Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is allowed pursuant to Section 502 of the Bankruptcy Code; or (c) the holder of a Claim based on such debt has accepted this Plan, including any interest accrued on Claims from the Petition Date.

*11.3 Injunction.* Except as provided in this Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability that is discharged or an Equity Interest or other right of an equity security holder that is affected pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities or rights: (i) commencing or continuing in any manner any action or other proceeding against the Debtors and Reorganized Debtors or their respective property; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Debtors or Reorganized Debtors or their respective property; (iii) creating, perfecting, or enforcing any lien or encumbrance against the Debtors or Reorganized Debtors or their respective property; (iv) asserting a set off, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtors or Reorganized Debtors or their respective property; and (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code.

*11.4 Exculpation.* Neither Debtors nor Reorganized Debtors nor any of their employees, advisors, attorneys, or agents, shall have or incur any liability to any holder of a Claim or Equity Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of

confirmation of this Plan, the consummation of this Plan, except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon advice of counsel with respect to their duties and responsibilities under this Plan or in the context of the Chapter 11 Case. No holder of a Claim or Equity Interest, or any other party in interest, including their respective agents, employees, representatives, financial advisors or attorneys, shall have any right of action against Debtors, Reorganized Debtors, or any of their respective present or former members, officers, directors, employees, advisors, attorneys, or agents, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of this Plan, the consummation of this Plan or the administration of this Plan, except for their willful misconduct.

## **ARTICLE XII**

### **MODIFICATION, AMENDMENT, AND WITHDRAWAL OF PLAN**

*12.1 Modification and Amendment.* Prior to Confirmation, any of the proponents may alter, amend, or modify this Plan or any Exhibits thereto under Section 1127(a) of the Bankruptcy Code at any time. After the Confirmation Date and prior to substantial consummation of this Plan as defined in Section 1101(2) of the Bankruptcy Code, the proponent may, under Section 1127(b), (c), and (d) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, to make appropriate adjustments and modifications to this Plan or the Confirmation Order as may be necessary to carry out the purposes and effects of this Plan so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under this Plan.

*12.2 Withdrawal of Plan.* Prior to Confirmation, the proponent may withdraw this Plan.

27

*12.3 Revocation or Withdrawal of this Plan.* If this Plan is withdrawn or revoked, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver of any Claims against the Debtors or any other person, nor shall the withdrawal or revocation of this Plan prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors. In the event this Plan is withdrawn or revoked, nothing set forth herein shall be deemed an admission of any sort and this Plan and any transaction contemplated thereby shall not be admitted into evidence in any proceeding.

*12.4 Severability Of Plan Provisions.* If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## ARTICLE XIII

### MISCELLANEOUS

*13.1 Professional Fee Claims.* All final requests for compensation or reimbursement of Professional Fees pursuant to sections 327, 328, 330, 331, 503(b) or ll03 of the Bankruptcy Code for services rendered to the Debtors prior to the Effective Date and substantial

contribution Claims under section 503(b)(4) of the Bankruptcy Code must be filed and served on the Reorganized Debtors and its counsel no later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtors and its counsel and the requesting Professional or other entity no later than thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

*13.2 Administrative Claims Bar Date.* All requests for payment of an Administrative Claim must be filed and set for hearing with the Bankruptcy Court and served on counsel for the Debtors, counsel for Debtors, and office of the United States Trustee no later than the close of business (Pacific Time) no later than 60 days after the Effective Date. Unless a party in interest objects to an Administrative Claim within thirty (30) Business Days after receipt, such Administrative Claim may be deemed allowed in the amount requested and shall receive payment as set forth in section 3.11 herein. In the event that a party in interests objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

*13.3 Compromises and Settlements.* Pursuant to Fed. R. Bankr. P. 9019(a), the Debtors may compromise and settle various Claims against them and or claims that they may have against other persons. On the Effective Date, such right shall pass to the Reorganized Debtors pursuant to Section 11.1 of this Plan.

*13.4 Payment Of Statutory Fees.* All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation shall be paid

on or before the Effective Date.

*13.5 Binding Effect.* This Plan shall be binding upon, and shall inure to the benefit of, the Debtors, and the holders of all Claims and Equity Interests and their respective successors and assigns.

*13.6 Governing Law.* Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any document contained in the Plan or in any document which remains unaltered by this plan, the rights, duties, and obligations of the Debtors and any other person arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada without giving effect to Nevada's choice of law provisions.

*13.7 Notices.* Any notice required or permitted to be provided under this Plan shall be in writing and served by either: (a) certified mail, return receipt required, postage prepaid; (b) hand delivery; or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

If to Debtors, to:

Glen Meek and Shawna Partridge
c/o E. Robert Spear
REMMEL & SPEAR, LLP
7456 West Sahara Suite 101
Las Vegas, Nevada 89117

*13.8 Plan Exhibits.* Any and all Plan Exhibits, or other lists or schedules not filed with the Plan shall be filed with the Clerk of the Bankruptcy Court at least five (5) Business Days prior to the date of the commencement of the Confirmation Hearing. Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*13.9 Cramdown.* In the event that any impaired Class is determined to have rejected this Plan in accordance with Section 1126 of the Bankruptcy Code, the Debtors will invoke the provisions of Section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of this Plan.

Dated this __28th__ day of January, 2010.

                                        __/s/ E. Robert Spear_____
                                        E. Robert Spear (8672)
                                        REMMEL & SPEAR, LLP
                                        7456 West Sahara Avenue Suite 101
                                        Las Vegas, Nevada 89117

                                        *Attorney for debtor*

Dated this __28th__ day of January, 2010.

                                        __/s/ Glen Meek_____
                                        Glen Meek

Dated this __28th__ day of January, 2010.

                                        __/s/ Shawna Partridge_____
                                        Shawna Partridge

31